IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PAMELA JEWEL VANWINKLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-143 |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Pamela Jewel Vanwinkle appeals the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff protectively applied for SSI in June 2014, alleging a disability onset date of April 17, 2014. Tr. ("R."), pp. 18, 183, 262. Plaintiff was thirty-three years old at her alleged disability onset date and was thirty-six years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 27, 260. The Commissioner's

---

[1]Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Andrew Saul, Commissioner of Social Security Administration, as the proper Defendant.

December 11, 2011 denial of a prior SSI application, (R. 103-107), is not at issue in the current appeal.

In the 2014 application, Plaintiff applied for benefits based on allegations of bipolar disorder, ulnar nerve transposition, PTSD, depression, personality disorder, and hypothyroidism, although she testified at the administrative hearing she did not have physical limitations. R. 51, 271. Plaintiff reported obtaining her GED and cosmetology training/licenses, as well as completing some college courses. R. 42, 272. Prior to her alleged disability, Plaintiff had no past relevant work under 20 C.F.R. § 416.965, but had performed some work as a hairstylist, waitress, and telemarketer. R. 45.

The Social Security Administration denied Plaintiff's application initially, R. 59-73, and on reconsideration, R. 74-92. Plaintiff requested a hearing before an ALJ, R. 121-23, and the ALJ held a hearing on February 27, 2017. R. 33-58. At the hearing, the ALJ heard testimony from Plaintiff, who appeared with a non-attorney representative, as well as from Ray Burger, a Vocational Expert ("VE"). Id. On August 30, 2017, the ALJ issued an unfavorable decision. R. 15-32.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since April 17, 2014, the application date (20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments: bipolar disorder, borderline personality disorder, anxiety, depression, polysubstance abuse, morbid obesity and lumbar disc disease (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4.      The claimant has the residual functional capacity ("RFC") to perform light work as defined in in 20 C.F.R. § 416.967(b), except she can occasionally stoop, crouch, and climb ramps or stairs.[2]  She cannot climb ladders, ropes or scaffolds.  She can complete simple, routine and repetitive tasks.  She can tolerate occasional interaction with coworkers.  She can tolerate occasional interaction with the general public that is superficial in nature.  She can tolerate ordinary work pressures but should avoid excessive workloads, high quotas, quick decision making, rapid changes in work tasks and multiple concurrent demands.  The claimant has no past relevant work. (20 C.F.R. § 416.965).

5.      Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including housekeeper cleaner, laundry worker, and inspector, all unskilled jobs with an SVP of 2.[3]  (20 C.F.R. §§ 416.969, and 416.969(a)).  Therefore, the claimant was not under a disability, as defined in the Social Security Act, since April 17, 2014, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 20-26.

When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g).

---

[2]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

[3]Using the skill level definitions in 20 C.F.R. § 416.968, the Dictionary of Occupational Titles lists a specific vocational preparation (SVP) time for unskilled work of 1-2.  See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . .  [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed."  20 C.F.R. § 416.968(a).

Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly formulate the RFC when she did not (1) include sufficiently specific work-related limitations consistent with the assessment of a consultative examiner to which the ALJ accorded significant weight, and (2) properly analyze Plaintiff's mental impairments, including her subjective complaints about them. See doc. no. 16 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 17.

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894

F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

Plaintiff argues the RFC conflicts with the opinion of consultative examiner M. Kevin Turner, Ph.D., regarding Plaintiff's ability to interact appropriately with supervisors.  Pl.'s Br., pp. 13-14.  Relying heavily on non-binding case law outside the Eleventh Circuit, Plaintiff further argues the ALJ improperly considered gaps in medical treatment and successful treatment with medication to determine Plaintiff could handle the mental requirements of unskilled work.  Id. at 14-19.  Finally, Plaintiff contends her subjective complaints regarding mental limitations were improperly discounted.  Id. at 19-21.  As explained below, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A.       Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).  Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*).  Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations.  Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

### B.       Assigning Weight to Medical Opinions

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing

20 C.F.R §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists.  See 20 C.F.R. § 416.927(c)(1)-(2), (5).  Under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.  SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 416.927(d).

### C. The ALJ Did Not Reject or Ignore Dr. Turner's Social Interaction Limitations

In formulating the RFC, the ALJ gave "significant weight" to Dr. Turner, the consultative examiner who evaluated Plaintiff on September 23, 2014.  R. 24, 992-95.  The ALJ determined Dr. Turner's findings were "well explained and consistent with his own exam findings, as well as the weight of the medical evidence" as described elsewhere in the administrative opinion.  R. 24.  The ALJ summarized Dr. Turner's findings as follows, "a range of no more than mild to moderate deficits in work related functions, with a fair prognosis with regular treatment."  R. 24 (citing R. 995).  The ALJ accounted for Dr. Turner's "mild to moderate deficits" in the RFC by limiting Plaintiff to unskilled work involving "simple, routine, and repetitive tasks" and "occasional" interaction with coworkers and the general public that is superficial in nature.  R. 22, 26.  The ALJ also determined Plaintiff should "avoid

excessive workloads, high quotas, quick decision making, rapid changes in work tasks and multiple concurrent demands."  R. 22.

No matter all of these limitations were included in the RFC, argues Plaintiff, because the ALJ failed to specifically mention supervisors, in addition to coworkers and the general public, when limiting Plaintiff's social interaction.  Pl.'s Br., p. 14 (citing R. 995 ("[Plaintiff's] ability to interact appropriately with coworkers, supervisors and the general public in an appropriate manner may be moderately limited as her mood is unstable at this time.").  According to Plaintiff, because the ALJ never mentioned the word "supervisors," it is unclear whether the ALJ understood or even considered Dr. Turner's opinion, and in any event, failing to articulate a reason for rejecting the opinion about supervisors is grounds for reversal.  Id. at 15.

In the Eleventh Circuit, however, an ALJ is "not required to refer to supervisors when the residual functional capacity assessment and the hypothetical question include[s] a restriction on [the claimant's] social interaction in the workplace."  Brothers v. Comm'r of Soc. Sec., 648 F. App'x 938, 938 (11th Cir. 2016) (per curiam); see also Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 542 (11th Cir. 2016) (per curiam) (finding moderate limitations in taking criticism from supervisors adequately accounted for in RFC limiting claimant "short, simple, instructions" and "only occasional contact with co-workers and the general public on routine matters").  This is entirely consistent with the more general principle that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" so long as the Court can determine the ALJ considered Plaintiff's condition as a whole.  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).

Although the ALJ did not mention supervisors in the RFC, she did not err because the restrictions on social functioning included in the RFC sufficiently accounted for potential interactions with supervisors.  R. 22.  Those same restrictions were included in the hypothetical presented to the VE.  R. 55.   The ALJ then properly relied on the VE's testimony to determine there are jobs existing in significant numbers in the national economy for Plaintiff such that she was not under a disability as defined in the Social Security Act.  See Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 686-87 (11th Cir. 2015) (per curiam) (citing McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (per curiam) and Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) for propriety of relying on VE testimony based on hypothetical accounting for all claimant impairments to determine whether claimant able to engage in work).

Plaintiff's first argument forms no basis for reversal or remand.

### D.     The ALJ's Decision Reflects Consideration of the Entire Record and Proper Discounting of Plaintiff's Subjective Complaints

The remaining arguments are two sides of the same coin in that Plaintiff contends the ALJ improperly rejected her subjective complaints and, had the ALJ properly viewed the evidence, the record shows Plaintiff's mental impairments prevent her from working.

### 1.     The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under the Eleventh Circuit's standard, Plaintiff must show:   (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  Id.

When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."   Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).   Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (*per curiam*) (citing 20 C.F.R. § 404.1529(c)(4)).   However, as explained *supra*, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. See SSR 96-5p; see also 20 C.F.R. § 416.927(d).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).  Social Security Ruling 16-3p, clarifies:

> that subjective symptom evaluation is not an examination of an individual's character. . . .
>
> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.   We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2016 WL 1020935, at *14167 (orig. publ. Mar. 16, 2016).

Moreover, this Court is required to uphold the Commissioner's determination regarding subjective complaints if it is supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[4]  As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer, 395 F.3d at 1210-11 (internal quotation marks and citations omitted).  As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record and did not limit Plaintiff's functioning and ability to perform light work as described in the administrative decision.

## 2.  The ALJ's Evaluation Is Supported by Substantial Evidence

At step two of the sequential evaluation process, the ALJ recognized multiple severe impairments related to Plaintiff's mental health:  bipolar disorder, borderline personality disorder, anxiety, and depression.  R. 20.  The regulations instruct that a severe impairment is one which significantly limits one's ability to perform "basic work activities."  20 C.F.R. § 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  Basic work activities involve "the abilities and aptitudes necessary to do most jobs," including, relevant to this case, "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." Id. § 416.922(b).  The ALJ recognized these multiple mental impairments as severe and continued with the sequential process by carefully considering any limitations imposed by Plaintiff's mental impairments and incorporating them in Plaintiff's RFC.

Plaintiff's briefing implies error by the ALJ and/or inability to work simply because Dr. Turner determined Plaintiff "appear[ed] to meet criteria for Bipolar Disorder at this time."  (R. 995.)  Mere diagnosis of an impairment does not equate with a finding of disability.  Not only is the ultimate conclusion on disability an issue reserved for the Commissioner, SSR 96-5p, but disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment.  See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard.").  As detailed above, the ALJ incorporated multiple mental limitations in the RFC to account for Plaintiff's bipolar disorder, as well as other her other mental issues.

In considering the entirety of Dr. Turner's opinion, the ALJ gave it significant weight and cited it in support of discounting the severity of Plaintiff's alleged difficulty with memory and understanding instructions, getting along with others, and concentrating long enough to follow written or spoken instructions.  R. 21-22, 24 (citing Ex. 11F, R. 992-95).  Although Plaintiff is supportive of Dr. Turner's findings of a moderate limitation on an ability to interact appropriately with supervisors in her first argument, Plaintiff now rejects Dr. Turner's findings, upon which the ALJ relied, that she may be mildly to moderately impaired in her ability to sustain attention and concentration due to current emotional symptoms.  R. 22, 995 (opining

attention and concentration seemed adequate during consultative interview).   Rather, Plaintiff argues she has more than moderate difficulties in concentration, persistence, and pace which prevent her from performing the jobs identified by the ALJ.  Pl.'s Br., p. 18.

First, Plaintiff relies on out-of-circuit precedent to suggest she cannot perform two jobs identified by the ALJ that have a GED reasoning code 2, requiring a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" is a red herring.   Pl.'s Br. p. 18 (citing Dictionary of Occupational Titles, 1991 WL 688702 (2008)).   In the Eleventh Circuit, a limitation to simple, routine work does not preclude performance of jobs as high as a GED reasoning code 3.   See Chambers v. Comm'r of Soc. Sec., 662 F. App'x 869, 873 (11th Cir. 2016) (*per curiam*) (reasoning level 3 and SVP of two shows job "requires, at a maximum, one month of time to learn the techniques, acquire the information, and develop the facility for average" job performance, making job consistent with unskilled work, needing little or no judgment to do simple duties), *overruled on other grounds*, Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018).

Second, Plaintiff complains the ALJ improperly discounted the severity of her mental impairments based on lengthy gaps in treatment and the recognition medication was generally successful in controlling Plaintiff's symptoms.  Pl.'s Br., pp. 15-16.  Again citing non-binding, out-of-circuit precedent, Plaintiff argues the ALJ's reliance on these factors was improper because the administrative decision failed "to consider the waxing and waning nature of her impairments." Id. at 15.  According to Plaintiff, gaps in treatment or being off her medication are disabling symptoms of her mental impairment, which bolster, rather than detract from, her subjective complaints.  Id. at 17.  Some of the records cited in support of her contention her mental impairments impeded her efforts to obtain treatment pre-date the onset date for this

13

application by over one year, (R. 850, 895-96 (Jan. 2013)), or actually support the contention she does well on medicine, even when she claims her mind races, (R. 1271).

In the Eleventh Circuit, "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citations omitted); Duval v. Comm'r of Soc. Sec., 628 F. App'x 703, 709-11 (11th Cir. 2015) (per curiam) (affirming ALJ's reliance on medication controlling claimant's symptoms as basis for discounting both physician opinion and claimant's subjective complaints). Minimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints. Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014); Gamble v. Colvin, No. 5:13-CV-01959-SLB, 2015 WL 2095064, at *6 (N.D. Ala. May 5, 2015). Moreover, an ALJ may consider the level of treatment sought when considering subjective complaints and may draw an adverse inference so long as any explanation for failure to seek treatment is considered. Jarrell, 433 F. App'x at 814; Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 817 (11th Cir. 2011) (per curiam).

Here, the ALJ acknowledged Plaintiff's claims of poor concentration and racing thoughts, but also cited portions of the record describing her concentration, attention and pace as generally normal. R. 22 (citing R. 1115, 1118, 1227, 258, 1291). The ALJ also recognized the most significant mental health findings in the record are associated with Plaintiff not taking her medication during unusually stressful events such as divorce, homelessness and death of a child. R. 24 (citing R. 1115, 1182). In some cases, the record shows even when Plaintiff had medication, she took it according to her personal preference rather than following the doctor's instructions. R. 1182.

Plaintiff's attempt to interpret the facts differently than the ALJ by pointing to select facts favoring her view of disability provides no basis for this Court to reverse or remand, particularly when the portions of the record cited in support of the argument almost exclusively predate the relevant time period, some as much as seven years. See Pl.'s Br., p. 18.[5]  This Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant.  See Crawford, 363 F.3d at 1158-59.  That a different result is *possible*, does not mean the Commissioner's decision must be reversed.  The ALJ considered the explanations for the gaps in treatment and taking medication and acknowledged there were some supportive exam findings for the impairments claimed.  R. 23, 24.  After through consideration of the entire record, the ALJ determined the issues regarding treatment and medication undercut, rather than supported, the severity of Plaintiff's claimed mental limitations.

Gaps in treatment and being off medication were not the only reasons the ALJ discounted the severity of Plaintiff's claimed mental limitations. Consistent with Eleventh Circuit precedent, the ALJ also considered inconsistent and contradictory statements from Plaintiff.  For example, during her examination with Dr. Turner on September 23, 2014, Plaintiff acknowledged a previous addiction to Percocet but denied any use in the prior two years.  R. 24 (citing R. 993).  However, the record shows the untruthfulness of Plaintiff's statement because she has repeatedly, without the apparent difficulty claimed in remembering to keep up with mental

_____

[5]Plaintiff's record citations, with treatment dates, concerning this portion of her argument are as follows:  R. 1008 (2007); R. 1014 (2007); R. 1016 (2007); R. 1067 (2011), R. 903 (2013); R. 917 (2013); R. 924 (2013); and R. 1258 (2017).  The alleged onset date for application under consideration is April 17, 2014.  R. 18.

health prescriptions, obtained refills of her Percocet prescriptions.  R. 24 (citing R. 949 (May 15, 2014); R. 1144 (Sept. 22, 2014); R. 1150 (Dec. 22, 2014); R. 1156 (Mar. 30, 2015)).  The ALJ may rely on untruthful statements in evaluating a claimant's credibility.  Stultz v. Comm'r of Soc. Sec., 628 F. App'x 665, 669 (11th Cir. 2015) (per curiam).

In addition to gaps in treatment, problems associated with being off mental health medication, and dishonest statements, the ALJ also properly contrasted Plaintiff's subjective complaints with her other activities of daily living in assessing her claimed level of mental impairment.  See Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (per curiam); May v. Comm'r of Soc. Sec. Admin., 226 F. App'x 955, 958-59 (11th Cir. 2007) (per curiam); 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p, at *3.  The ALJ contrasted Plaintiff's claimed difficulty in getting along with others with her stated ability to maintain friendships, attend church regularly, engage in romantic relationships, and otherwise get along well in public. R. 22 (citing R. 303; R. 994).  The ALJ also contrasted Plaintiff's level of reported mental limitations with her reports of living alone independently, preparing complete meals, performing household chores, driving, and managing money.  R. 22 (citing R. 43, 44, 49-50, 299-306).

A claimant has the burden of proving her disability and is responsible for providing evidence in support of her claim.  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Plaintiff may disagree with the ALJ's interpretation of the evidence, but this Court's job is not to re-weigh the evidence.  See Moore, 405 F.3d at 1211.  Substantial evidence supports the ALJ's RFC determination, and Plaintiff's arguments form no basis for reversal or remand.

**IV.    CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 8th day of July, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA